IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KEVIN CLEVELAND,** | : | Civil No. 3:13-CV-281 |
| **Plaintiff** | : | |
| v. | : | |
| | : | (M. J. Carlson) |
| **UNITED STATES OF AMERICA** | : | |
| **Defendant.** | : | |

**MEMORANDUM ORDER**

**I.      Statement of Facts and of the Case**

This case comes before us for consideration of a letter request by the plaintiff, a federal prisoner, who belatedly seeks to enforce a 2013 settlement reached in this litigation. (Doc. 26). For the reasons set forth below, this request will be denied.

The plaintiff is a federal prisoner who was housed in the United States Penitentiary, Canaan. In 2013 Cleveland filed a complaint which brought an action the United States of America pursuant to the Federal Tort Claims Act ("FTCA") 28 U.S.C. § 2401, *et seq*. and 28 U.S.C. § 2675, *et seq*. The plaintiff's *pro se* complaint recited that, in June of 2011, the prison served inmates chicken fajitas. (Doc. 1.) According to the plaintiff, the chicken was bad and was tainted with salmonella

1

bacteria. (Id.) Consequently, the plaintiff contracted food poisoning and suffered excruciating pain and symptoms, which included headaches, diarrhea, abdominal pains, nausea, chills, vomiting, inability to eat and profuse sweating. (Id.) Alleging negligence on the part of the prison in the preparation and service of this food, the plaintiff sought damages from the defendant.

This was one of a number of related actions in which federal inmates have sued the United States of America, alleging injuries stemming from the consumption of food contaminated with salmonella that was served at the United States Penitentiary, Canaan. We coordinated pre-trial management of these cases and ordered all parties to participate in mandatory mediation of the plaintiff's claims. As part of this mediation program, it was reported that this case had settled, and the case was therefore dismissed on June 4, 2013. (Docs. 18-19.)

Seven years then passed before Cleveland filed a letter request to enforce the settlement in July of 2020 (Doc. 26), which alleged that, while a full payment was made to the plaintiff by the U.S. Treasury pursuant to this settlement agreement, the Treasury, which is not a party to this case, applied these funds to pay other debts in the nature of child support owed by Cleveland. While doubtless disappointing to Cleveland, this practice is permitted by law. As a legal matter, the Treasury has statutory authority to collect delinquent non-tax debts owed to the federal

2

government by offsetting payments made by other federal agencies. 31 U.S.C. § 3716; 31 C.F.R. § 285.5(a)(1). These offsets can occur for child support, federal taxes, state taxes, restitution, or any other delinquent amount owed to the federal, state, or local government, and payments made from the Judgment Fund to satisfy awards are statutorily required to be offset pursuant to 31 U.S.C. § 3728 and 31 U.S.C. § 3716. Therefore, absent some explicit statutory language to the contrary, there is no exception to this legal requirement that these payments be offset.

In this case, it appears that, pursuant to the legally-mandated Treasury offset program, the Treasury applied these settlement funds against some other outstanding debt owed by the plaintiff. Inmate-plaintiffs, like Cleveland, who believe that they are aggrieved by this Treasury offset may reach out directly to the Treasury at (800) 304-3107. In the event the inmate is unable to contact the Judgment Fund by telephone, the address to contact the judgment fund is: Judgment Fund Branch, Financial Management Service, U.S. Department of Treasury, 3700 East West Highway, Room 6E15Hyattsville, Maryland 20782. However, for the reasons set forth below, this *pro se* motion to enforce is DENIED since the defendant has substantially complied with the terms of the agreement, but under other provisions of federal law, the plaintiff's settlement payment has been applied to the plaintiff's outstanding, pre-existing financial obligations.

## II. <u>Discussion</u>

Cleveland's letter request to enforce this settlement calls upon us to consider the relationship between this settlement and other provisions of law that oblige the United States Treasury to collect sums owed by persons like the plaintiff. Here, the defendant initially fulfilled its obligations to the plaintiff under this settlement agreement by seeking and securing the issuance of a settlement payment to the plaintiff's benefit. However, by statute, the Treasury was then required to apply that payment as an offset against a pre-existing debt of the plaintiff's. By applying this payment as an offset, the Treasury has complied with law—the plaintiff has benefitted from his settlement agreement bargain, in that his pre-existing and outstanding debts have been reduced, and third parties who were owed moneys by the prisoner-plaintiff, debts that may include child support and restitution, have also directly benefitted.

The nature of this offset program has been aptly described in the following terms:

> The practice of withholding federal payment in satisfaction of a debt is known as an administrative offset." <u>Reeves v. Astrue</u>, 526 F.3d 732, 738 n. 3 (11th Cir.), <u>petition for cert. filed</u> (U.S. Aug. 1, 2008) (No. 08-5605). The Debt Collection Improvement Act of 1982, 31 U.S.C. §§ 3701 *et seq.,* authorizes the Treasury Department "to collect non-tax debts by withholding funds paid out by other federal agencies." <u>Reeves</u>, 526 F.3d at 738 n. 3; <u>see</u> 31 U.S.C. § 3716(a); 31 C.F.R. § 285.5.

> Pursuant to the TOP, any federal agency with a claim against the debtor, after notifying the debtor that the debt is subject to administrative offset and providing an opportunity to dispute the debt or make arrangements to pay it, may collect the debt by administrative offset. See 31 U.S.C. § 3716(a), (c)(6). In order to do so, the creditor agency must certify to Treasury that the debt is eligible for collection by offset and that all due process protections have been met. See 31 C.F.R. § 285.5(d)(3)(ii), (d)(6). If properly certified, the Treasury Department must administratively offset the debt. See 31 U.S.C. § 3716(c)(1)(A).

Johnson v. U.S. Dep't of Treasury, 300 F. App'x 860, 862 (11th Cir. 2008) (footnotes omitted).

Under the offset program, a wide array of payments are eligible for offset. These payments, which may be applied to offset prior debts, include the following:

> Except as set forth in paragraph (e)(2) of this section, all Federal payments are eligible for offset under this section. Eligible Federal payments include, but are not limited to, Federal wage, salary, and retirement payments, vendor and expense reimbursement payments, certain benefit payments, travel advances and reimbursements, grants, fees, refunds, judgments (including those certified for payment pursuant to 31 U.S.C. 1304), tax refunds, and other payments made by Federal agencies.

31 C.F.R. § 285.5(e)(1).[1]

---

[1] We note that: "This section does not apply to the following payments: (I) Black Lung Part C benefit payments, or Railroad Retirement tier 2 payments; (ii) Payments made under the tariff laws of the United States; (iii) Veterans Affairs benefit payments to the extent such payments are exempt from offset pursuant to 38 U.S.C. 5301; (iv) Payments made under any program administered by the Secretary of Education under title IV of the Higher Education Act of 1965 for which payments are certified by the Department of Education; (v) Payments made under any other Federal law if offset is expressly prohibited by Federal statute; and (vi) Payments made under any program for which the Secretary has granted an exemption . . . ." 31 C.F.R. § 285.5 (e)(2). However, none of these exceptions to the Treasury offset program has any relevance to the plaintiff's claims in this case.

The regulations' inclusion of moneys "certified for payment pursuant to 31 U.S.C. 1304," 31 C.F.R. § 285.5(e)(1), among the types of proceeds which are subject to offset means that a prisoner-plaintiff's settlement proceeds are subject to this statutory offset since "[an inmate's] settlement falls under 31 U.S.C. § 1304(a), which includes compromise settlements in suits against the United States." United States v. Bailey, CRIM. 03-370 ADM/AJB, 2013 WL 5964447 (D. Minn. Nov. 4, 2013) (citing 31 U.S.C. § 1304(a)(3)(A)). Furthermore, once funds are subject to offset, payments under this Treasury offset program can then be used to pay a wide range of debts owed by a federal prisoner, including child support obligations; United States v. Bailey, CRIM. 03-370 ADM/AJB, 2013 WL 5964447 (D. Minn. Nov. 4, 2013), and victim restitution. See United States v. Beulke, 892 F. Supp. 2d 1176, 1187 (D.S.D. 2012). Thus, the offset payments have a social benefit and resonance that reaches far beyond the parties to a particular settlement and may embrace a host of third parties, including crime victims, who directly benefit from this offset program.

Moreover, the statute and regulations governing the Treasury offset program ensure that persons, like the prisoner-plaintiff, receive due process protection both before and after an offset is applied against moneys that are otherwise payable to that person. Thus, at the outset:

> Pursuant to th[is program], any . . . agency with a claim against the debtor, after notifying the debtor that the debt is subject to administrative offset and providing an opportunity to dispute the debt or make arrangements to pay it, may collect the debt by administrative offset. See 31 U.S.C. § 3716(a), (c)(6). In order to do so, the creditor agency must certify to Treasury that the debt is eligible for collection by offset and that all due process protections have been met. See 31 C.F.R. § 285.5(d)(3)(ii), (d)(6).

Johnson v. U.S. Dep't of Treasury, 300 F. App'x 860, 862 (11th Cir. 2008). In this regard, "[t]he extensive regulatory framework governing the [Treasury offset program] TOP provide ample guidance for . . . agencies to refer debtors to the TOP, protect a debtor's due process, and offset their disbursements to satisfy their debt such that a court order is not required." United States v. Beulke, 892 F. Supp. 2d 1176, 1187 (D.S.D. 2012). Further, persons who are dissatisfied with the application of a Treasury offset may pursue "administrative procedure[s] 'established by statute and administered under implementing regulations, which provide due process to debtors against whom offset is sought.' " Beulke, 892 F. Supp. 2d at 1187 (quoting United States v. Mayer, 2010 WL 4916561, at *1 (D.N.H. Dec. 3, 2010). Finally, if at the end of this administrative process a prisoner plaintiff remains displeased with a Treasury offset decision, that prisoner may, upon exhaustion of his administrative remedies, file an action in federal court challenging this offset decision. See generally Omegbu v. U.S. Dep't of Treasury, 118 F. App'x 989, 990 (7th Cir. 2004).

7

Given the panoply of procedural protections that apply to this Treasury offset process, courts have typically held that persons litigating or settling claims against the United States are not entitled to additional, specific advance notice that the proceeds obtained in their litigation may at some later date be subject to a Treasury offset. As one court has aptly noted in this regard: "[T]he United States Attorney's Office is not responsible for [an inmate's] personal debts and did not have an additional responsibility to remind [the inmate] in the settlement agreement that the funds would be offset," United States v. Bailey, CRIM. 03-370 ADM/AJB, 2013 WL 5964447 (D. Minn. Nov. 4, 2013). Therefore, the failure to provide such notice does not violate the substantive rights of a plaintiff whose award is later subject to a Treasury offset. See McCarty v. Astrue, 505 F. Supp. 2d 624, 632 (N.D. Cal. 2007) Thus, in the past when prisoner-plaintiffs who have settled claims with the United States have objected to the application of the Treasury offset program to these settlement funds, these complaints have been found to be unavailing since the Treasury is, by law, required to offset these payments against funds previously owed by persons who are now seeking recovery from the United States. See Tavares v. United States, No. 3:CV-13-1654, 2014 WL 4351532, at *3 (M.D. Pa. Sept. 2, 2014); United States v. Bailey, CRIM. 03-370 ADM/AJB, 2013 WL 5964447 (D. Minn. Nov. 4, 2013).

In light of these settled legal principles, we find that the plaintiff's request to enforce this settlement, which in effect seeks to challenge this offset, fails as a matter of law for the following six reasons:

First, the defendant has substantially complied with the agreement by arranging for the Treasury to issue a payment to the plaintiff in the amount agreed upon by the parties. Therefore, there has been no material breach of the agreement. United States v. Bailey, CRIM. 03-370 ADM/AJB, 2013 WL 5964447 (D. Minn. Nov. 4, 2013).

Second, the plaintiff has received the benefit of this payment under the agreement, albeit in an indirect fashion, through the reduction of the plaintiff's outstanding and pre-existing indebtedness.

Third, the application of the Treasury offset to this payment is mandated by law and is largely a non-discretionary function by Treasury, a duty which Treasury cannot avoid performing since: "If properly certified, the Treasury Department *must* administratively offset the debt. See 31 U.S.C. § 3716(c)(1)(A)." Johnson v. U.S. Dep't of Treasury, 300 F. App'x 860, 862 (11th Cir. 2008) (emphasis added). Therefore, we should not interfere with the Treasury in its performance of this duty which it is required by law to perform.

Fourth, the statute and regulations creating the Treasury offset program provide ample due process protections to a prisoner plaintiff prior to an offset and

allow for administrative agency review of any offset decisions, followed by judicial review of particular offsets, if necessary. These due process protections ensure that the prisoner-plaintiff is not subject to an erroneous and improper offset. Therefore, if the prisoner-plaintiff believes that the offset was made in error, his remedy is to pursue the administrative and legal process set by statute for challenging the offset, rather than attempting to modify or set aside this settlement agreement.

Fifth, attempting to modify, or set aside, this offset action at this point could harm the interests of third parties, including victims entitled to restitution or dependents awaiting child support. Since a modification of the offset is not required by law, we should refrain from taking any action with respect to that offset which could prejudice the rights and interests of innocent third parties. Nor should we direct a separate, additional payment to the plaintiff. Such a payment would be an undeserved windfall for the plaintiff, and would also likely be subject to Treasury offset, making any further payment both a fruitless gesture and an inappropriate benefit to the plaintiff.

Sixth, as a matter of law, the plaintiff simply was not entitled to additional, specific advance notice that the proceeds obtained in this settlement might at some later date be subject to a Treasury offset. In short, "the United States Attorney's Office is not responsible for [an inmate's] personal debts and did not have an additional responsibility to remind [the inmate] in the settlement agreement that the

funds would be offset," <u>United States v. Bailey</u>, CRIM. 03-370 ADM/AJB, 2013 WL 5964447 (D. Minn. Nov. 4, 2013).

In sum, to the extent that the plaintiff is aggrieved by the application of a Treasury offset to his settlement funds, his relief lies through administrative proceedings or separate litigation challenging that offset decision. However, it is clear that the plaintiff may not seek relief from the offset in this lawsuit through a motion attempting to vacate or set aside this action that the Treasury is mandated by law to undertake in order to ensure that the plaintiff pays his other pre-existing debts. <u>See</u> <u>Tavares v. United States</u>, No. 3:CV-13-1654, 2014 WL 4351532, at *3 (M.D. Pa. Sept. 2, 2014). Therefore, this request to enforce this settlement (Doc., 26), will be denied.

An appropriate order follows.

### III.   Order

Accordingly, for the foregoing reasons, the plaintiff's request to enforce this settlement, (Doc. 32), is DENIED.

So ordered this 13th day of July 2020.

*S/Martin C.   Carlson*
Martin C. Carlson
United States Magistrate Judge
